**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| S&A PAK, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:12CV008  SWW |
| THH PROPERTIES LIMITED | * | |
| PARTNERSHIP, ET AL. | * | |
| | * | |
| Defendants | | |

**<u>ORDER</u>**

Plaintiff S&A Pak, Inc. ("S&A") commenced this action in state court against THH Properties Limited Partnership ("THH"); PLT Properties LLC ("PLT");  D&B Thompson Properties LP ("D&B");  Duncan Thompson Petroleum, Inc. ("Duncan Thompson"); T.C. Fuels LP ("T.C. Fuels"); and Joe D. Thompson ("Thompson").  Defendants removed the case to this federal court, alleging complete diversity between the parties and an amount in controversy in excess of $75,000.   Now before the Court is Defendants' motion to dismiss (docket entry #1) seeking (1) dismissal of claims against separate defendants D&B, Duncan Thompson, and Thompson for lack of personal jurisdiction and  (2) dismissal of this action for improper venue or, alternatively, for transfer under 28 U.S.C. § 1404.   S&A has filed a response in opposition (docket entry #4), and Defendants have filed a reply (docket entry #15).  After careful consideration, and for reasons that follow, Defendants' motions are denied.

**Background**

Plaintiff S&A is an Arkansas corporation, with a principal place of business in Jacksonville, Arkansas, and Defendants THH, PLT, D&B, and Duncan Thompson are Texas business entities with principal places of business in Texas.  Defendant Thompson, a resident of Texas, is the general partner of the managing member of THH, the manager of PLT, and the president of Duncan Thompson.

On May 30, 2008, S&A entered a contract for deed ("Contract for Deed") with THH, PLT, D&B, and Duncan Thompson (collectively, "Sellers"), which provides that S&A will take possession of and make payments toward the purchase of four convenience store/gas stations ("Stores")-two located in Arkansas and two in Texas.[1]  *See* complaint, Ex. A (Contract for Deed).

Thompson signed the Contract for Deed on behalf of THH, PLT, and Duncan Thompson; Mohammad Lone, the president of S&A, signed on behalf of S&A; and non-party Billie Jo Thompson signed on behalf of D&B.  Notary certificates following the signatures show that Thompson and Lone signed the agreement in Louisiana, and Billie Jo Thompson signed the agreement in Texas.

The Contract for Deed requires that S&A pay a total purchase price of $2,697,500 for the Stores and fulfill other obligations, including the duty to "execute and faithfully perform all obligations" set forth in a Fuel Purchase Agreement annexed to the Contract for Deed.  *See*

---

[1]The original Contract for Deed included five convenience store/gas stations: (1) Stateline Exxon, located in Texarkana, Arkansas; (2) 59 Exxon, located in Atlanta, Texas; (3) I-30 Store, located in Arkansas; (4) Shelby Exxon, located in Texarkana, Texas; and (5) Bloomberg Exxon, located in Bloomburg, Texas.  *See* Complaint, Ex. A.  However, on February 17, 2009, S&A and the Sellers executed a modification to the Contract for Deed, which removed 59 Exxon from the agreement.  *See* complaint, Ex. D.

Contract for Deed, ¶ 4(C).  The Fuel Purchase Agreement,[2] signed by Thompson on behalf of

T.C. Fuels and by Lone on behalf of S&A, provides that the only fuel S&A will sell at the Stores

is fuel provided by S&A on a consignment basis.   *See* Complaint, Ex. B (Fuel Purchase

Agreement, ¶ 1).  The Fuel Purchase Agreement provides that it will continue for a primary, ten-

year term, which may be renewed for a secondary, five-year term.  *See id.*, ¶ 2.

The Fuel Purchase Agreement states that the proceeds of  S&A's retail fuel sales shall

remain the property of T.C. Fuels or, alternatively, that T.C. Fuels will have a security interest in

the proceeds.  *See id*.  The agreement further provides that  S&A will deposit all revenues from

fuel sales into a bank account designated by T.C. Fuels and that T.C. Fuels will remit

commission payments to S&A after deducting certain charges.  *See id.*, ¶¶ 4, 5.

The Sellers received all amounts due from S&A under the Contract for Deed by

deducting the payments from S&A's fuel sales deposits.   Lone testifies by affidavit that "Joe

Thompson and his staff were responsible for reconciling revenues and commissions owned for

fuel with payments owed under the Contract for Deed."   Docket entry #4, Ex. A, ¶ 8.  And

Thompson testifies that "funds payable from and to S&A . . . were administered in Atlanta,

Texas."  Docket entry #8, Ex. A, ¶ 14.

On November 3, 2011, approximately three and one-half years after the parties entered

the Contract for Deed, the Sellers  notified S&A by letter that S&A had defaulted under the

Contract of Deed by (1) failing to equip the Stores with certain cash registers, (2) attempting to

sell one of the Stores located in Arkansas, and (2) failing to keep one of the Stores located in

Texas in good repair.  *See* Complaint, Ex. E.  The notice-of-default letter is signed by Thompson

---

[2]Apparently, after entering the Fuel Purchase Agreement, the parties renamed it "Fuel
Supply Agreement."

as the Sellers' representative.

On November 8, 2011, Kusumakar Sooda, a tenant who leased one of the Arkansas Stores from S&A, informed S&A that Thompson had informed him that S&A no longer owned or managed the Store. *See* Complaint, Ex. F. By e-mail message to Lone dated December 1, 2011, Thompson wrote:

> Although we have the right to declare the Contract for Deed forfeited, we have offered to pay you the sum of $85,000.00 in consideration of your execution of a Termination Agreement, a copy of which is attached. Thus far, you have declined to do so. The purpose of this e-mail is to advise you that if we have not received from you the actual signed Termination Agreement by 5:00 p.m. on Wednesday, December 7, 2011, our offer to pay you the sum of $85,000.00 will be automatically revoked. If that occurs, we will deliver to you a letter declaring the Contract for Deed to be forfeited pursuant to paragraph 16 of the Contract, and will notify all interested parties of that fact.

Complaint, Ex. G.

On December 7, 2011, S&A filed this action against Defendants in the Circuit Court of Pulaski County, Arkansas, charging Defendants with breach of contract, intentional interference with S&A's business relations, and civil conspiracy to interfere with S&A's contractual relationships and terminate the Contract for Deed. In addition to compensatory damages and lost profits, S&A asks the Court to find that it did not default under the Contract for Deed and to declare the Contract for Deed an equitable mortgage.

## Motion to Dismiss for Lack of Personal Jurisdiction by D&B, Duncan Thompson, and Thompson

Separate Defendants D&B, Duncan Thompson, and Thompson, all citizens of Texas, seek dismissal of claims against them based on lack of personal jurisdiction. A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state. Arkansas's long-arm statute permits the

4

assertion of jurisdiction to the fullest extent allowed by the Fourteenth Amendment's Due

Process Clause, which permits the exercise of personal jurisdiction over a nonresident defendant

that has "certain minimum contacts with [the forum state] such that the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*

*v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457,

463 (1940)).

 The Supreme Court has held that in order to exercise personal jurisdiction, "it is essential

in each case that there be some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228 (1958).   Five

factors should be considered when resolving a personal jurisdiction inquiry:  (1) the nature and

quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the

relation of the cause of action to the contacts; (4) the interest in the forum state in providing a

forum for its residents; and (5) the convenience of the parties.  *Digi-Tel Holdings, Inc. v. Proteq*

*Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522-23 (8ᵗʰ Cir. 1996).[3]   The first three factors

are closely related and are of primary importance, while the last two factors are secondary.  *Id.* at

523.

---

 [3]The Supreme Court has identified two types or theories of personal jurisdiction: general
and specific.   General personal jurisdiction exists when the defendant has "continuous and
systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise
out those contacts.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,
415-16, 104 S.Ct. 1868 (1984).   Specific personal jurisdiction, in contrast, exists only if the
injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id.* at
414, 104 S.Ct. 1868.   Here, the separate defendants' alleged contacts with Arkansas are related
to the dispute giving rise to this litigation and are insufficient to subject the separate defendants
to general jurisdiction in Arkansas.

<u>D&B and Duncan Thompson</u>

Defendants report that D&B and Duncan Thompson own the Texas Stores and THH and PLT own the Arkansas Stores.  According to D&B and Duncan Thompson, they  "simply were parties to the Contract for Deed with other Texas entities, where those other entities agreed to convey Arkansas convenience stores to an Arkansas resident."  Docket entry #8, at 4.

The Supreme Court has held that an individual's contract with an out-of-state party, standing  alone, is insufficient to establish sufficient minimum contacts in the other party's home forum to support personal jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2184-85 (1985).   The Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Id*. (citing *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-317, 63 S.Ct. 602, 604-605 (1943)).   In a contract case, in determining whether a defendant purposefully established minimum contacts with the forum state, a court must consider  the parties' prior negotiations, contemplated future consequences, the terms of the contract, and the  actual course of dealings.  *See  Burger King*, 471 U.S. 462 at 479, 105 S.Ct. 2174.

Regarding prior negotiations, S&A maintains that all negotiations regarding the Contract for Deed took place in Arkansas.  *See* docket entry #4, Ex. A.   By affidavit, Lone reports that he met with Thompson in Arkansas at least four times to negotiate the terms of the agreement. Thompson, on the other hand, denies that all negotiations took place in Arkansas.  *See* docket entry #8, Ex. A.  According to Thompson, he met Lone at a restaurant in Texarkana, Arkansas to discuss business unrelated to the Contract for Deed, and "Lone simply questioned in an off-hand

manner that he may be interested in acquiring the stores owned by the defendant entities . . . . "

Docket entry #8, Ex. A, ¶ 23.  Thompson testifies that after the Arkansas meeting,  Lone

contacted him at his office in Texas to communicate his desire to purchase convenience stores.

According to Thompson, an attorney located in Louisiana prepared Contract for Deed, and S&A

accepted the terms with few or no changes.

Although it does not appear that the parties' prior negotiations took place exclusively in

Arkansas, it is undisputed that the parties' actual course of dealings brought Thompson to

Arkansas.  Thompson visited Arkansas on at least one occasion and informed Lone that S&A

had violated the Contract for Deed.  *See* docket entry #8, Ex. A, ¶ 30.   Additionally, it is

undisputed that Thompson, on behalf of the Sellers, dispatched letters and email messages to

Arkansas that concerned the Contract for Deed.  See *id*., ¶ 32, *see also* Complaint, Exs. E, G.

The terms of the Contract for Deed indicate that the Sellers envisioned an ongoing

business relationship with S&A that would include substantial contacts with the forum state.

The Contract for Deed, which refers to THH, PLT, D&B, and Duncan Thompson as "Sellers,"

does not differentiate one seller from another, and it gives the Sellers identical rights related to

S&A's operation of *each* store included in the agreement.

For example, the Contract for Deed provides that S&A will be in default upon the

happening of specified events, including S&A closing any one or more of the Stores or failing to

perform obligations under the Fuel Purchase Agreement, and the "Sellers" are authorized to

enter "upon any or all" property covered under the agreement to inspect and observe whether

S&A is fulfilling its contractual obligations.  *See* Contract for Deed, ¶¶ 12, 15.   The agreement

further provides that if  S&A fails to cure a default within ten days, the "Sellers" may declare the

entire contract forfeited and retain S&A's payments as liquidated damages.   *See* Contract for

Deed,

¶ 16.

D&B and Duncan Thompson contend that they merely accepted payments in Texas for

the sale of their Texas property.[4]  However, the entities' actual conduct directed at Arkansas

supports a finding that they could reasonably anticipate being haled to court here.  Even though

the separate defendants state that they have no interest in the Arkansas Stores, they joined PLT

and THH in declaring S&A to be in default and terminating the Contract for Deed because S&A

attempted to sell one of the Arkansas Stores to Sooda.

In sum, the Court finds that D&B and Duncan Thompson purposefully directed their

activities toward Arkansas residents by entering the Contract for Deed, which contemplated

long-term, ongoing contacts with the forum state.

<u>Thompson</u>

Thompson notes that he is not a party to the Contract for Deed or Fuel Purchase

Agreement, and he argues that his contacts with Arkansas "were isolated and of low quality."

Docket entry #8, at 5.   Thompson further argues that because S&A has failed to identify any

tortious act that he committed in Arkansas, there is no basis for personal jurisdiction over him.[5]

It is undisputed that Thompson has been physically present in Arkansas for the purpose

---

[4]The evidence shows that the payments received by D&B and Duncan Thompson were obtained in part from S&A's fuel sales in Arkansas.  Additionally, the Contract for Deed obligated S&A to sell fuel in Arkansas in accordance with terms of the Fuel Purchase Agreement.

[5]S&A charges that Thompson and the Sellers intentionally interfered with his contractual relationships and business expectancies in Arkansas by ousting S&A from the Stores and dealing directly with S&A's tenants.

of meeting with Lone on the Sellers' behalf regarding S&A's performance under the Contract for Deed.  Additionally, Thompson acknowledges that on one such visit, he informed Lone that S&A had violated the parties' agreements.  Furthermore, a legal description attached as an exhibit to the Contract for Deed shows that Thompson holds title to one of the Arkansas Stores at issue in this case.  *See* Contract for Deed, Ex. A.  The Court finds that the relationship among Thompson, Arkansas, and this litigation and Thompson's conduct purposefully directed toward Arkansas are such that he received fair warning that his activities in the state might subject him to litigation here.

Considering the separate defendants' contacts with Arkansas and the totality of the circumstances, that Court finds that the first three factors relevant to a personal jurisdiction inquiry-- the nature and quality of the separate defendants' contacts with the forum state, the quantity of the contacts, and the relationship of the contacts to the cause of action–weigh in favor of finding personal jurisdiction over D&B, Duncan Thompson, and Thompson.

As to the fourth factor, the interest of the forum state in providing a forum for its residents,  Defendants acknowledge that Arkansas has an interest in providing a forum for resident corporations such as S&A.  However, Defendants assert that Arkansas's interest is diminished because the Contract for Deed contains a choice-of-law provision stating that the contract will be governed and construed in accordance with Texas law.  Although a choice of law provision may be considered in determining whether a defendant has purposefully invoked the benefits and protections of a state's laws, the Court finds no authority for the proposition that a choice of law provision diminishes a state's interest in providing a forum for its residents.

Regarding the fifth factor, the convenience of the parties, a plaintiff is generally entitled

to select the forum in which it will litigate, and any inconvenience that Defendants will experience by litigating in this forum is equal to the hardship that S&A would experience if forced to litigate elsewhere.  In sum, the Court finds that exercising personal jurisdiction over D&B, Duncan Thompson, and Thompson comports with due process.

## Motion to Dismiss for Improper Venue

Defendants assert that venue is not proper in this judicial district because none of the bases for venue listed under 28 U.S.C. § 1391(a)(2) are met.  However, the general venue statute, 28 U.S.C. § 1391, does not apply to a case that has been removed to federal court.  *See Polizzi v. Cowles Magazines, Inc*., 345 U.S. 663, 665, 73 S.Ct. 900 (1953).  Instead, the venue of a removed action is governed by 28 U.S.C. § 1441(a), which authorizes removal to the district court for the district and division embracing the place where the state court action is pending.  Under § 1441(a), venue is proper in this district and division.

## Motion to Transfer Venue

Defendants request that the Court transfer this case to the Western District of Louisiana. Title 28 U.S.C. § 1404(a) provides:   "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The Eighth Circuit has noted three factors a court must consider in deciding whether to transfer a case: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice."[6] *Terra Intern., Inc. v. Mississippi*

---

[6]The "interests of justice" factors include: "(1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflicts of law issues; and (7) the advantages of having a local court determine questions of local law."  *Terra Intern., Inc. v.*

*Chemical Corp.*, 119 F.3d 688, 691 (8ᵗʰ Cir. 1997).

In support of their motion to transfer venue, Defendants note that the Contract for Deed contains a non-exclusive venue provision which states that the parties consent to the personal jurisdiction of the courts of the State of Louisiana and to the venue of the First Judicial District Court for Caddo Parish, Louisiana. *See* complaint, Ex. A, ¶ 27.  Defendants do not explain how the convenience of the parties and witnesses and the interests of justice would be served by the proposed transfer.  Defendants simply state, with no elaboration, that a transfer would increase judicial efficiency and preserve the parties' resources.

S&A objects to the proposed transfer, noting that none of the parties reside in  Louisiana, and none of the real property at issue is located in Louisiana.  S&A further notes that its officers reside in Arkansas, much of the real property at issue is located in Arkansas, and events giving rise to this litigation took place in Arkansas.  Additionally, S&A points out that as a matter of convenience and economy in judicial administration, this case has been consolidated with  *Sooda et al. v. S&A Pak, Inc., et al.*, Case No. 4:11CV00811 SWW (E.D. Ark.).

The Eighth Circuit has advised that  "federal courts give considerable deference to a plaintiff's choice of forum and ... the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra*, 119 F.3d at 695.  In this case, the Court finds that Defendants have failed to show that a transfer would serve the convenience of parties and witnesses or the interests of justice.

---

*Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8ᵗʰ Cir. 1997).

For the reasons stated, the Court finds that Defendants' motion to dismiss (docket entry #1) should be and it is hereby DENIED.

IT IS SO ORDERED THIS 9TH DAY OF APRIL, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE